**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cincinnati Bar Assn. v. Wiest,* **Slip Opinion No. 2016-Ohio-8166.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8166

CINCINNATI BAR ASSOCIATION *v*. WIEST.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cincinnati Bar Assn. v. Wiest,* **Slip Opinion No. 2016-Ohio-8166.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension with second year conditionally stayed.*

(No. 2016-0263—Submitted May 4, 2016—Decided December 19, 2016.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2014-095.

_____

**Per Curiam.**

**{¶ 1}** Respondent, Christopher D. Wiest of Fort Mitchell, Kentucky, Attorney Registration No. 0077931, was admitted to the practice of law in Ohio in 2004 and in Kentucky in 2005. He was employed by Thompson Hine, L.L.P., from September 2005 through July 2012 and throughout the course of his employment

SUPREME COURT OF OHIO

performed environmental due-diligence services[1] for firm client Stanley Works, later known as Stanley Black and Decker ("Stanley"), a publicly traded company. Those services were typically related to Stanley's proposed mergers, acquisitions, or divestitures.

{¶ 2} In December 2014, relator, Cincinnati Bar Association, filed a complaint with the Board of Commissioners on Grievances and Discipline (now known as the Board of Professional Conduct), alleging that Wiest violated his oath of office and the Rules of Professional Conduct by using confidential information he obtained during the course and scope of representing Stanley in his personal purchase of 35,000 shares of InfoLogix, Inc., a company that Stanley sought to acquire. The panel of the board appointed to hear the matter granted relator leave to amend its complaint to allege additional facts and ethics violations—all of which arose from Wiest's trading in InfoLogix stock. At the hearing, however, relator's focus shifted from Wiest's trading in InfoLogix stock to his alleged disclosure of Stanley's confidential documents and information to the United States Securities and Exchange Commission ("SEC") during its investigation of his trading activities.

{¶ 3} Having considered the testimonial and documentary evidence submitted by the parties, the panel unanimously dismissed an alleged violation of Prof.Cond.R. 1.6(a) (prohibiting a lawyer from revealing confidential client information without informed consent) on the ground that relator's complaint failed to provide Wiest notice that his conduct during the SEC investigation was at issue, and an alleged violation of Prof.Cond.R. 1.8(b) (prohibiting a lawyer from using information relating to the representation of a client to the client's disadvantage without first obtaining the client's informed consent) based on the insufficiency of the evidence regarding the requirement that the lawyer's conduct disadvantaged the

---

[1] The services consisted of searching publicly available databases for records relating to the subject of the search.

2

client. But the panel and board both found by clear and convincing evidence that Wiest had violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Based on that misconduct, the panel and board recommended that Wiest be suspended from the practice of law for two years with the final 18 months stayed on the condition that he engage in no further misconduct.

{¶ 4} Both Wiest and relator raise multiple objections to the board's findings of fact and misconduct, and Wiest also objects to the recommended sanction.

{¶ 5} For the reasons that follow, we sustain Wiest's first objection and dismiss the alleged violation of Prof.Cond.R. 8.4(b) on due-process grounds, overrule the parties' remaining objections, and suspend Wiest from the practice of law for two years with the second year stayed on the condition that he engage in no further misconduct.

**Stipulated Facts**

{¶ 6} On October 21, 2010, in the course and scope of his employment, Wiest received an e-mail from WSP Environmental and Energy, Inc. ("WSP"), an environmental consultant group that collaborated with Thompson Hine on various Stanley projects. The e-mail requested that Wiest perform due-diligence services for the potential acquisition by Stanley of InfoLogix, Inc. Attached to the e-mail was a document prepared by or for Stanley that provided details of the proposed acquisition, including Stanley's willingness to pay $4.75 a share for InfoLogix stock.

{¶ 7} Wiest had never heard of InfoLogix before he received the October 21, 2010 e-mail. Wiest understood that Stanley's interest in acquiring InfoLogix was nonpublic and confidential information from the time he received the e-mail until the acquisition was made public on December 15, 2010. He stipulated that at

no time from September 2010 to December 15, 2010, did any agent of Stanley inform him that the information provided to him on October 21, 2010, ceased to be nonpublic and confidential.  And at no time from October 21, 2010, through December 15, 2010, did he seek permission from anyone at Stanley, WSP, or Thompson Hine to use any nonpublic or confidential client information for securities-trading purposes.

{¶ 8} On October 21, 2010, InfoLogix publicly disclosed that its stock had been delisted from the NASDAQ stock market effective at the open of trading that day.  The delisting was due to the company's failure to satisfy a minimum $2,500,000 stockholder's equity requirement.  InfoLogix shares began trading over the counter with another electronic quotation service.  Wiest learned of these developments shortly after they were announced but did not inquire as to whether they would have any impact on Stanley's proposed acquisition of InfoLogix.  After receiving an October 26, 2010 inquiry from WSP about the status of the environmental due diligence for the proposed acquisition, Wiest completed the task and provided the results to both WSP and Stanley.

{¶ 9} On October 28, 2010, Wiest placed a market order to purchase 10,000 shares of InfoLogix common stock using his Thompson Hine 401K account.  His broker purchased 9,500 shares at $2.84 each and 500 shares at $2.77 each.  From November 8 through November 16, Wiest acquired an additional 25,000 shares at prices ranging from $1.95 to $2.15 a share.  On November 18, as the price continued to drop, Wiest placed a day-limit order to sell 25,000 shares of the stock at a limit price of $1.35 a share.  That order resulted in the sale of 13,510 shares at $1.35 a share, for a loss of $17,701.36, and left Wiest with 21,490 shares of InfoLogix stock.

{¶ 10} After the stock market closed on December 15, 2010, Stanley publicly announced that it was acquiring InfoLogix for $4.75 a share.  The next day, Wiest searched the Internet for a lawyer with expertise in SEC matters and

4

contacted an attorney in Fort Lauderdale, Florida, for advice. On the advice of that counsel, he sold his remaining shares of InfoLogix stock for a pretax profit of $56,291.97.

## Panel Dismissal of Some Allegations of Misconduct
## Based on Lack of Notice and Insufficiency of the Evidence

*The Panel Unanimously Dismissed an Alleged Violation of Prof.Cond.R. 1.6(a) on Due-Process Grounds*

{¶ 11} At the hearing and in posthearing briefs, relator argued that Wiest violated Prof.Cond.R. 1.6(a) by providing confidential client information to the SEC and by testifying before the SEC without first seeking Stanley's informed consent. Wiest urged the panel to dismiss this alleged violation on the ground that relator did not provide him with adequate notice of the charge against him. He argued that in each of its complaints (its original complaint and three amended complaints), relator alleged that Wiest's misconduct occurred in the context of his trading in InfoLogix shares—not in his alleged disclosure of Stanley's confidential information to the SEC, as relator argued at the hearing.

{¶ 12} In its written report, the panel unanimously dismissed the alleged violation of Prof.Cond.R. 1.6(a) on the ground that none of relator's complaints provided Wiest with sufficient notice of the activity upon which relator intended to base the charge—i.e., that his misconduct was alleged to have occurred in the context of disclosing Stanley's confidential information to the SEC. The panel found that relator had not alleged *any* facts regarding Wiest's disclosure of confidential client information to the SEC in any of the complaints that it filed in this case or even in its prehearing discovery correspondence with Wiest's counsel. The panel therefore concluded that the complaint did not give Wiest sufficient notice that it was that alleged conduct—rather than his trading in InfoLogix stock— that formed the basis of his alleged ethics violation. Neither party has objected to the panel's dismissal of the alleged violation of Prof.Cond.R. 1.6(a).

SUPREME COURT OF OHIO

*We Dismiss an Alleged Violation of Prof.Cond.R. 8.4(b)*

**{¶ 13}** Despite having found that Wiest had no notice that his alleged disclosure of Stanley's confidential information to the SEC was at issue, the panel and board found that by engaging in that conduct, Wiest violated R.C. 1333.81 (prohibiting an employee from knowingly disclosing without the employer's consent confidential information obtained in the course and scope of employment) and Prof.Cond.R. 8.4(b).

**{¶ 14}** Wiest objects to these findings on the ground that relator's eleventh-hour change in the theory of its case deprived him of due process. He argues that none of relator's four complaints alleged any factual allegations that would put him on notice that he was expected to defend his disclosure of information to the SEC—rather than his alleged trading activity—before the day of the hearing. He therefore contends that he did not have an adequate opportunity to prepare his defense against these allegations.

**{¶ 15}** In disbarment proceedings, an attorney accused of misconduct is "entitled to procedural due process, which includes fair notice of the charge." *In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), citing *In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948). "The charge must be known before the proceedings commence. [The proceedings] become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh." *Id.* at 551. The "absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges" deprives an attorney facing discipline of procedural due process. *Id.* at 552. Applying these principles, we have held that an attorney may not be found to have misled disciplinary authorities during the investigation or proceedings in violation of Prof.Cond.R. 8.4(c) unless such conduct was alleged in the complaint against the

attorney.  *Cincinnati Bar Assn. v. Sigalov*, 133 Ohio St.3d 1, 2012-Ohio-3868, 975 N.E.2d 926, ¶ 42, 46.

**{¶ 16}** Here, the panel found that relator's failure to allege any facts that would put Wiest on notice that his disclosure of documents to and testimony before the SEC were at issue was fatal to the alleged violation of Prof.Cond.R. 1.6(a).  That failure likewise proves fatal to relator's belated claim that the same conduct also violated Prof.Cond.R. 8.4(b).  Therefore, we sustain Wiest's first objection and dismiss the alleged violation of Prof.Cond.R. 8.4(b).

*We Will Not Review the Panel's Unanimous Dismissal*
*of the Alleged Violation of Prof.Cond.R. 1.8(b)*

**{¶ 17}** Beginning with the first amended complaint, relator alleged that Wiest violated Prof.Cond.R. 1.8(b) by using Stanley's confidential information about InfoLogix for his personal stock trading without seeking Stanley's informed consent.

**{¶ 18}** Wiest testified that he did not use Stanley's confidential information in deciding to purchase InfoLogix stock and claimed that he based that decision on other factors, including the delisting of the stock from the NASDAQ exchange and the resulting price volatility of the stock.  The panel did not find Wiest's testimony to be credible and determined that he used the confidential information he obtained during his representation of Stanley in deciding to purchase the stock.  But the panel unanimously found that relator failed to submit testimonial evidence from anyone with firsthand knowledge that Wiest's conduct disadvantaged Stanley.  Based on the insufficiency of that evidence, the panel dismissed the alleged violation of Prof.Cond.R. 1.8(b) in its entirety.  Relator now objects to that dismissal and argues that the panel inadvertently overlooked additional record evidence that Wiest's conduct placed the client at a disadvantage.

**{¶ 19}** Gov.Bar R. V(12)(G) expressly authorizes a unanimous hearing panel to dismiss a complaint or count of a complaint if it finds that there is

insufficient evidence to support it. And we have held that under those circumstances, "[a] unanimous dismissal by the panel precludes further review of the dismissal by either the board or this court." *Disciplinary Counsel v. Hale*, 141 Ohio St.3d 518, 2014-Ohio-5053, 26 N.E.3d 785, ¶ 22, citing *Cuyahoga Cty. Bar Assn. v. Marosan*, 109 Ohio St.3d 439, 2006-Ohio-2816, 848 N.E.2d 837, ¶ 13, and *Columbus Bar Assn. v. Dougherty*, 105 Ohio St.3d 307, 2005-Ohio-1825, 825 N.E.2d 1094, ¶ 9.[2] We therefore overrule relator's objection in this regard.

### Wiest Violated Prof.Cond.R. 8.4(c)

**{¶ 20}** The only charge that remains is an allegation that Wiest engaged in dishonesty, fraud, deceit, or misrepresentation in violation of Prof.Cond.R. 8.4(c). Relator's complaints alleged that Wiest used confidential information obtained in the course and scope of his representation of Stanley to trade in InfoLogix stock and failed to consult with either his client or his employer before doing so.

**{¶ 21}** Wiest testified that his purchase of InfoLogix stock was based on factors wholly independent of the confidential information he obtained from his client. He claimed that it was the delisting and resulting volatility of the stock that attracted him, and he offered evidence that he had previously purchased other delisted stocks. He also cited his personal opinion that Stanley was not moving forward with its plans to purchase InfoLogix, based on a number of factors, including (1) the delisting of the stock on the same day he received his first environmental due-diligence assignment on the project—October 21, 2010, (2) his perception that there was a lack of urgency in his work assignment, (3) his own delay of almost a week in completing that project, (4) his delay in responding to a second assignment on the project, and (5) the impending October 30, 2010 closing

---

[2] Under prior versions of the Supreme Court Rules for the Government of the Bar, there were circumstances in which this court would consider a relator's objections to alleged violations that a panel of the board purported to have dismissed. Following amendments to the rules effective January 1, 2015, however, we have declined to do so. *See Cincinnati Bar Assn. v. Fernandez*, __ Ohio St.3d __, 2016-Ohio-5586, __ N.E.3d __, ¶ 14-15.

January Term, 2016

deadline stated in the client's confidential materials—which he later noted fell on a Saturday.

**{¶ 22}** Simply stated, the panel (and consequently the board) found that Wiest's testimony regarding his motivation for purchasing the stock and his belief that the deal was not moving forward were not credible. Instead, the panel and board found that Wiest engaged in inherently dishonest and deceitful behavior not only by using confidential client information to purchase the stock for his own pecuniary benefit but also by failing to seek the informed consent of his client or his firm before doing so.

**{¶ 23}** Wiest objects to this finding, arguing that relator failed to prove by clear and convincing evidence that he believed that Stanley was going to move forward with the transaction and traded based on that information such that he engaged in intentional acts of dishonesty, fraud, deceit, or misrepresentation. He contends that independent, undisputed, and uncontradicted evidence substantiates his testimony that he did not believe that Stanley was moving forward with the acquisition of InfoLogix.

**{¶ 24}** To the extent that Wiest and the board focus solely on Wiest's "use" of confidential client information in deciding to purchase InfoLogix stock, they misapprehend the true nature of his dishonesty and deceit and overlook Wiest's profound failure to appreciate what is perhaps one of the most fundamental of his professional obligations—his duty to communicate openly with his client. Although relator's complaints focused primarily on Wiest's use of Stanley's confidential information, they also alleged that he failed to disclose his actions to his client (or his firm) or to seek his client's informed consent to his actions.

**{¶ 25}** The primary purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d

584 (1981). The confidentiality afforded by the privilege encourages clients to make full disclosure to their attorneys without fear of disclosure or reprisal. *Id.*, citing *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

**{¶ 26}** In conjunction with the attorney-client privilege, the Rules of Professional Conduct not only encourage but require attorneys to engage in frank discussions with their clients regarding matters that may affect the legal affairs their clients have entrusted to them. For example, Prof.Cond.R. 1.4 requires a lawyer to communicate with a client by promptly informing the client of decisions or circumstances affecting the lawyer's representation that require the client's informed consent, by reasonably consulting with the client about the means by which the client's objectives are to be accomplished, by keeping the client reasonably informed about the status of a matter, and by explaining a matter to the extent necessary to permit the client to make informed decisions regarding the representation. Prof.Cond.R. 1.4(a)(1) through (3) and 1.4(b). And Prof.Cond.R. 1.6(a) prohibits a lawyer from revealing confidential client information without first obtaining the client's informed consent. As used in the Rules of Professional Conduct, informed consent "denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Prof.Cond.R. 1.0(f). Thus, in every instance in which the rules permit an attorney to act with the client's informed consent, they require the attorney to engage in a meaningful discussion with the client about the material risks of and alternatives to the proposed action.

**{¶ 27}** In this case, relator charged Wiest with a violation of Prof.Cond.R. 1.8(b), which prohibits a lawyer from using information relating to the representation of a client to the client's disadvantage without first obtaining the client's informed consent. The panel unanimously dismissed that count on the

January Term, 2016

ground that relator failed to present sufficient evidence that Wiest's actions placed Stanley at a disadvantage. But relator's failure to carry its burden of proving that Wiest's conduct caused actual disadvantage to the client did not relieve Wiest of his duty to engage in a meaningful discussion with his client about the risks of and alternatives to his proposed stock purchases—purchases that Wiest acknowledged would have been inappropriate or even illegal if he had believed that Stanley still was contemplating acquisition of InfoLogix.

{¶ 28} We cannot conceive of a situation in which an attorney could divorce a client's confidential communication that it was willing to pay more than 50 percent above a stock's current trading price from his desire to invest in that stock, and we find that Wiest's claims that he did so are disingenuous. But even if we were to credit his claim in that regard, the actions he took for his own pecuniary benefit created at least an appearance that he was using confidential client information for his personal gain and a substantial risk that his client's interests would be negatively impacted, which also triggered his duty to communicate with his client.

{¶ 29} Rather than pick up the phone and talk with his client, Wiest pieced together a string of evidence that no reasonable person, let alone an attorney, would rely upon to unilaterally determine that his client's proposed business deal was dead. He then failed to disclose his purchase of stock in the very company that his client had engaged his services to acquire. Not only did he conceal his intention to purchase stock from his client, he remained silent upon learning that his client was moving forward with its acquisition of that company and once again remained silent when the SEC issued a subpoena compelling him to produce his client's confidential information. Thus, it is Wiest's repeated concealment of information that he was duty-bound to communicate to his client from which we infer his intent to engage in dishonesty, fraud, deceit, or misrepresentation. *See, e.g.*, *Disciplinary Counsel v. Robinson*, 126 Ohio St.3d 371, 2010-Ohio-3829, 933 N.E.2d 1095,

¶ 18-21 (rejecting a respondent's self-serving claims and inferring his state of mind from his conduct and the surrounding circumstances). We therefore overrule Wiest's objection and find that his conduct in this matter violated Prof.Cond.R. 8.4(c).

### Relator's Failure to Comply with Gov.Bar R. V(9)(D) Is Not Fatal to the Complaint

**{¶ 30}** In addition to challenging the board's findings of fact and misconduct, Wiest argues that relator's complaint should be dismissed in its entirety for its failure to submit written requests to the board for extensions of time for completion of the investigation.

**{¶ 31}** Gov.Bar R. V(9)(D) provides that the investigation of grievances by the Office of Disciplinary Counsel or a certified grievance committee "shall be concluded within sixty days from the date of the receipt of the grievance" and that a decision as to the disposition "shall be made within thirty days after the conclusion of the investigation." While Gov.Bar R. V(9)(D)(1) permits the investigating entity to request an extension of time to complete an investigation, it specifies that the Office of Disciplinary Counsel or a certified grievance committee "shall submit a written request for an extension" to the director of the Board of Professional Conduct.

**{¶ 32}** Wiest asserts that relator's investigation commenced in mid-May 2014, that relator did not submit its probable-cause complaint to his counsel until November 24, 2014, and that relator failed to submit any written request for an extension of the 60-day time limit for its investigation. Moreover, he argues that relator did not initiate its investigation until approximately three and a half years after the misconduct was alleged to have occurred.

**{¶ 33}** Relator admitted that it did not submit a written request for an extension of time to complete its investigation. The director of the board has discretion, however, to extend time limits beyond 150 days of the date of filing of

the grievance, although the rule makes it clear that "[n]o investigation shall be extended beyond one year from the date of filing of the grievance." Gov.Bar R. V(9)(D)(2). And the rule plainly states that these time limits are not jurisdictional. Gov.Bar R. V(9)(D)(3).

{¶ 34} No grievance was filed in this case. Relator opened its investigation in mid-May 2014 in response to news reports regarding Wiest's settlement with the SEC and submitted its initial complaint to the board on November 25, 2014. The investigation was complete approximately six months after the public announcement of Wiest's SEC settlement—and well within the maximum time limit contemplated by the rule. And any delay in the commencement of the investigation was nowhere near as egregious as the nine-year delay that we found to be prejudicial in *Cleveland Bar Assn. v. Mallin*, 86 Ohio St.3d 310, 312, 715 N.E.2d 122 (1999) (dismissing disciplinary complaint filed against an attorney nearly nine years after the original grievance was filed and approximately 12 years after the events giving rise to the complaint occurred). Because the processes and procedures established under Gov.Bar R. V are to be "construed liberally for the protection of the public, the courts, and the legal profession," Gov.Bar R. V(27)(C), and because Wiest has demonstrated no prejudice arising either from relator's failure to formally request an extension of time or from the resulting delay, we overrule this objection.

**Sanction**

{¶ 35} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, relevant aggravating and mitigating factors, and the sanctions imposed in similar cases. *See* Gov.Bar R. V(13)(A).

{¶ 36} As mitigating factors, the parties stipulated and the board found that Wiest has no prior disciplinary record, had cooperated in the disciplinary proceedings, had demonstrated his good character and reputation in the legal

community apart from the misconduct at issue in this case, and had had other penalties imposed for his conduct in that he has made payments to the SEC of $61,414.97 in restitution for illicit profits plus interest and an additional $56,292 in penalties. *See* Gov.Bar R. V(13)(C)(1), (4), (5), and (6).

{¶ 37} Although the parties did not stipulate to any aggravating factors, the board found that Wiest exhibited a dishonest and selfish motive by virtue of using confidential client information for his own pecuniary benefit and that he also revealed confidential client information to the SEC without notifying the client, attempting to obtain a confidentiality waiver from the client, or contesting the subpoena (conduct that we have determined was not adequately alleged in relator's complaints). *See* Gov.Bar R. V(13)(B)(2).

{¶ 38} Relator recommended that Wiest be required to serve an actual suspension from the practice of law in Ohio. In contrast, Wiest urged that he be publicly reprimanded or ordered to serve no more than a fully stayed six-month suspension if the charges against him were not dismissed.

{¶ 39} Based on not only their finding that Wiest engaged in deception but also their finding that he engaged in illegal conduct (which we have dismissed on due-process grounds), the panel and board recommended that he be suspended from the practice of law in Ohio for two years but that the final 18 months of his suspension be stayed on the condition that he engage in no further misconduct.

**Wiest Objects to the Aggravating Factors Found by the Board
and to the Board's Recommended Sanction**

{¶ 40} Wiest objects to the aggravating factors found by the board. He argues that he did not use his client's confidential information in making the decision to buy InfoLogix stock and that his conduct was not dishonest, because he truly believed that Stanley was not moving forward with the InfoLogix acquisition. But we have rejected those arguments above in the context of the alleged violation of Prof.Cond.R. 8.4(c). Although Wiest acknowledges that we generally impose

an actual suspension from the practice of law when an attorney engages in dishonest conduct, he argues that a lesser sanction may be appropriate when the misconduct is an isolated incident in the attorney's career or when little or no harm resulted from the misconduct. *See, e.g.*, *Disciplinary Counsel v. Cuckler*, 101 Ohio St.3d 318, 2004-Ohio-784, 804 N.E.2d 966 (publicly reprimanding an attorney who, for more than one year prior to his admission to the Ohio bar, held himself out as "deputy chief legal counsel" to the speaker of the Ohio House of Representatives even though he actually served as a legislative aide or law clerk under the supervision of a licensed attorney); *Medina Cty. Bar Assn. v. Cameron*, 130 Ohio St.3d 299, 2011-Ohio-5200, 958 N.E.2d 138 (imposing a fully stayed one-year suspension on an attorney who engaged in dishonest conduct by falsely representing to a court that he had reached a settlement with an expert witness who had sued him for failing to pay his fee for preparing a report in a slip-and-fall case).

**{¶ 41}** Wiest also argues that given his single incident of misconduct and the applicable mitigating factors, a fully stayed six-month suspension is appropriate in this case. In support of this argument, he cites a number of cases in which we imposed fully stayed six-month suspensions on attorneys who engaged in limited instances of falsifying documents. *See, e.g.*, *Columbus Bar Assn. v. Stubbs*, 109 Ohio St.3d 446, 2006-Ohio-2818, 848 N.E.2d 843 (attorney pleaded guilty to falsifying a document to convince the Ohio Bureau of Motor Vehicles that she had been properly insured at the time she received a traffic citation); *Disciplinary Counsel v. Carroll*, 106 Ohio St.3d 84, 2005-Ohio-3805, 831 N.E.2d 1000 (attorney submitted inaccurate time sheets while working for a state board); *Disciplinary Counsel v. Markijohn*, 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24 (attorney falsely reported to the Internal Revenue Service and his law firm that he had made contributions to the law firm's retirement plan); *Dayton Bar Assn. v. Kinney*, 89 Ohio St.3d 77, 728 N.E.2d 1052 (2000) (attorney knowingly made false

statements to a government agency concerning the purchase price of a bar that his client was selling).

**{¶ 42}** In contrast, relator argues that because Wiest's use of his client's confidential information is a form of misappropriation akin to embezzlement, for which we have permanently disbarred attorneys, Wiest's conduct warrants at least a two-year suspension from the practice of law. *See, e.g.*, *Disciplinary Counsel v. Hunter*, 106 Ohio St.3d 418, 2005-Ohio-5411, 835 N.E.2d 707 (disbarring attorney who, over three years, embezzled nearly $300,000 from the estates of two people for whom she served as a court-appointed guardian); *Disciplinary Counsel v. Nothstein*, 21 Ohio St.3d 108, 488 N.E.2d 180 (1986) (disbarring attorney who engaged in a scheme to misappropriate approximately $40,000 from his law firm over a two-year period).

**{¶ 43}** We find, however, that the cases cited by the parties do not accurately reflect the character of Wiest's misconduct—which consists primarily of failing to engage in frank discussions with his client to determine whether his trading in InfoLogix stock would negatively impact the client's interests. Thus, we conclude that his misconduct is more akin to cases in which attorneys have failed to reasonably communicate with their clients, *see* Prof.Cond.R. 1.4, or who have failed to obtain their clients' informed consent when there is a substantial risk that the lawyer's ability to represent the client will be materially limited by the lawyer's own personal interests, *see* Prof.Cond.R. 1.7(a)(2).

**{¶ 44}** In *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, an attorney who held himself out as both a practicing attorney and a financial planner and consultant failed to fully disclose to his client his personal financial interest in the financial investments he recommended. Buttacavoli not only billed the client for his legal services but also received a sales commission of nearly $3,500. We found that he violated DR 5-101(A)(1) (prohibiting a lawyer from accepting employment if the lawyer's exercise of

professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests unless the client consents after full disclosure) and 5-104(A) (prohibiting a lawyer from entering into a business transaction with a client if they have differing interests unless the client has consented after full disclosure). But having found that Buttacavoli did not act with a selfish or dishonest motive and that no aggravating factors were present, we suspended him from the practice of law for six months, all stayed on the condition that he engage in no further misconduct. *Id.* at ¶ 17, 19.

{¶ 45} At the opposite end of the spectrum, in *Medina Cty. Bar Assn. v. Carlson*, 100 Ohio St.3d 134, 2003-Ohio-5073, 797 N.E.2d 55, we imposed a two-year suspension on an attorney who arranged to buy for a fraction of its worth the farm that was the subject matter of the litigation for which his mentally ill client had retained him and also set up the transaction to give the appearance that his client had consented after full disclosure. Mitigating factors included a lack of prior discipline, Carlson's general cooperation in the disciplinary process, evidence of his good character and reputation apart from the charged misconduct, and the fact that his misconduct was limited to a single episode, but aggravating factors included a lack of remorse and his selfish motive to take advantage of a vulnerable client by seizing an opportunity that arose from the subject matter of his professional representation. And although Carlson, like Wiest, claimed that he truly believed that his actions complied with the ethical code and that he did not know the true value of his client's property, we rejected his explanation as incredible, stating, "In short, we simply do not believe that any duly licensed attorney could out of pure inadvertence and incompetence so completely disregard a client's interests." *Id.* at ¶ 29.

{¶ 46} "There is nothing more critical to the professional relationship between attorney and client than the trust and confidence of the person being represented." *Fox & Assocs. Co., L.P.A. v. Purdon*, 44 Ohio St.3d 69, 71, 541

SUPREME COURT OF OHIO

N.E.2d 448 (1989).  Regardless of whether Wiest actually used Stanley's confidential information to further his own investment portfolio, we have found that he exhibited a dishonest and selfish motive by failing to communicate with his client.  That dishonest conduct began even before he bought his first shares of InfoLogix stock on October 28, 2010, and was still ongoing when he testified before the SEC on July 9, 2012, about legal matters that the client had entrusted to him.  And although Wiest's conduct may not have caused actual financial harm to his client, it has undoubtedly given the affected client and countless others pause as to whether to disclose confidential business strategies and secrets to their legal counsel in the future.  Such concerns necessarily harm the entire legal profession.

{¶ 47} While we acknowledge that Wiest's conduct is not as egregious as that of the attorney in *Carlson*, we find that Wiest's dishonest conduct, his dishonest and selfish motive, his complete disregard for his client, and his complete abdication of his duty to communicate with his client warrant an actual suspension from the practice of law that is greater than the sanction recommended by the board.

{¶ 48} Accordingly, Christopher David Wiest is suspended from the practice of law in Ohio for two years with the second year stayed on the condition that he engage in no further misconduct.  If Wiest fails to comply with the condition of the stay, the stay will be lifted and he will serve the entire two-year suspension.  Costs are taxed to Wiest.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Ann Lugbill, James F. Brockman, and Edwin W. Patterson III, General Counsel, for relator.

Montgomery, Rennie & Jonson, L.P.A., and George D. Jonson, for respondent.

January Term, 2016

_____